**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

ROBERT F. URBANO,

               **Plaintiff,**

    v.

AQUA INVESTMENTS, LLC,

               **Defendant.**

**CIVIL ACTION DOCKET**
**No. 05-CV-11480 LTS**

**PLAINTIFF URBANO'S ASSENTED TO MOTION**
**FOR LEAVE TO FILE AMENDED COMPLAINT**

      Plaintiff Robert F. Urbano (hereinafter "Mr. Urbano") hereby requests leave, pursuant to

Fed. R. Civ. P. 15(a), to file his proposed Amended Complaint against Defendant Aqua

Investments, LLC (hereinafter "Defendant").  The proposed Amended Complaint seeks to clarify

and add to the factual allegations and claims set forth in Mr. Urbano's Complaint, which he filed

*pro se*.  Defendant has assented to the filing of the proposed Amended Complaint.  A copy of the

proposed Amended Complaint is attached hereto as Exhibit A.

      As set forth herein, Mr. Urbano's Motion should be granted because: (1) there has not

been any undue delay or bad faith on Mr. Urbano's part; (2) filing the Amended Complaint at

this stage in the litigation will not cause Defendant any undue prejudice; and (3) the Amended

Complaint will help to clarify the facts and legal issues in the case.  Accordingly, this Court

should grant Mr. Urbano's motion.

**Procedural Background**

      Mr. Urbano originally filed his Complaint in Northeast Housing Court on June 27, 2005.

He prepared and filed the Complaint *pro se*.  Defendant removed the action to this Court on July

11, 2005.  However, the litigation has been largely on hold since August 2005, when Mr. Urbano suffered a heart attack.  Mr. Urbano proceeded *pro se* until counsel was appointed on November 11, 2005.

**Argument**

This Court should allow Mr. Urbano's motion to amend his Complaint because: (1) there has not been any undue delay or bad faith on Mr. Urbano's part in seeking to amend the Complaint; (2) filing the Amended Complaint at this stage in the litigation will not cause Defendant any undue prejudice; and (3) the Amended Complaint will help to clarify the facts and legal issues in the case.

**I.     Leave to File Amended Pleadings is to be Liberally Granted.**

Leave to amend pleadings is to be freely given when justice so requires.  Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Farkas v. Texas Instruments, Inc.*, 429 F.2d 849, 851 (1st Cir. 1970).  "In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be 'freely given.'"  *Foman*, 371 U.S. at 182.  This motion easily satisfies the standard for allowing leave to file an amended complaint, as set forth below.

**II.     There Has Not Been Any Undue Delay or Bad Faith on Mr. Urbano's Part.**

In the absence of undue delay or bad faith on the part of Mr. Urbano, this Court should grant Mr. Urbano leave to amend his Complaint.  This action was filed on June 27, 2005 and removed to this Court on July 11, 2005.  The litigation has been largely on hold since Mr. Urbano suffered a heart attack in August 2005.  The filing of this motion is timely in light of Mr. Urbano's health, as between August and November 2005, he was seriously ill and therefore

unable to proceed with the litigation.  Additionally, Mr. Urbano's counsel was only recently appointed, on November 11, 2005.

Further, Mr. Urbano seeks leave to amend his Complaint in order to clarify and add to the factual allegations and claims set forth in the Complaint.  One motivation in amending the complaint is to make Mr. Urbano's *pro se* Complaint more clear and concise.  Additionally, based on Mr. Urbano's counsel's analysis of the facts and legal issues implicated in this matter, Mr. Urbano seeks to add new claims.  In seeking to amend the Complaint, Mr. Urbano is not acting in bad faith or out of a dilatory motive.  As this motion is both timely and made in good faith, this Court should grant Mr. Urbano leave to amend his Complaint.

### III. Granting Mr. Urbano Leave to File an Amended Complaint Will Not Cause Defendant Undue Prejudice.

Allowing Mr. Urbano to amend his Complaint at this early stage in the litigation will not cause Defendant undue prejudice.  This litigation is in the initial stages -- discovery has commenced, but has not advanced beyond the filing of Interrogatories.  Any additional facts or claims alleged in the Amended Complaint will not cause prejudice to Defendant, as there is ample time for Defendant to respond to those claims.  Motions for leave to amend the pleadings have been granted where the litigation was more advanced than in the instant case.  *See Martin v. Sands*, 62 F. Supp. 2d 196, 198 (D. Mass. 1999)(Motion for Leave to Amend the answer allowed 17 months into litigation, after depositions had been taken); *McMillan v. Mass. Society for the Prevention of Cruelty to Animals*, 168 F.R.D. 94, **9-13 (D. Mass. 1995)(Motion to Amend Counterclaim allowed when defendant sought to "further particularize" the claims nearly two years after close of discovery and one month after plaintiff's motion for summary judgment).  Finally, Defendant has assented to the filing of the Amended Complaint.

**IV.    The Amended Complaint Will Clarify the Facts and Legal Issues in the Case.**

In light of the recent appointment of counsel, an Amended Complaint will help to clarify the factual allegations and legal issues in this litigation. *See Farkas*, 429 F.2d at 851-852 (in reversing district court's denial of leave to file amended complaint, fact that plaintiff was proceeding *pro se* until filing of the proposed amended complaint bears on propriety of denial of leave to amend). Such clarification should help the case to progress more quickly, as Defendant will be provided with clear notice of Mr. Urbano's claims and their factual bases.

WHEREFORE, Mr. Urbano respectfully requests that the Court grant him leave to file his Amended Complaint.

ROBERT F. URBANO,

By his attorneys,


  /s/ Adam Weisberger
Adam Weisberger (BBO# 646844)
FOLEY HOAG LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, MA 02210-2600
tel (617) 832-1000
fax (617) 832-7000
aweisberger@foleyhoag.com

Dated:  December 5, 2005


Assented to:   /s/ Todd Bennett
                Todd Bennett (BBO# 643185)
                Corrigan, Bennett & Belfort, P.C.
                404 Main Street, Suite One
                Wilmington, MA 01887
                tel: (978) 988-1544
                fax: (978) 988-1545
                tbennett@corbenbel.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **ROBERT F. URBANO,** | |
| **Plaintiff,** | **CIVIL ACTION DOCKET** |
| **v.** | **No. 05-CV-11480 LTS** |
| **AQUA INVESTMENTS, LLC,** | |
| **Defendant.** | |

**AMENDED COMPLAINT**

**Introduction**

This is an action brought by Robert F. Urbano (hereinafter "Mr. Urbano") against Aqua Investments, LLC (hereinafter "Defendant") for monetary damages arising out of Defendant's (1) failure to warn of possible lead paint in a leased residential property; (2) commencement of a retaliatory eviction proceeding; and (3) other violations of Massachusetts landlord tenant law. These acts of Defendant have resulted in damage to plaintiff.

**Parties**

1.     Plaintiff Robert F. Urbano is a Massachusetts resident residing at 272 Washington Street, Gloucester, Massachusetts 01930.

2.     On information and belief, Defendant Aqua Investments, LLC is a Massachusetts Limited Liability Company with its principal place of business at 27 Water Street, Wakefield, Massachusetts 01880.

**Jurisdiction and Venue**

3.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, in that a federal question is raised.

B3125688.1

4.      Pursuant to 28 U.S.C. § 1391(b), Venue is proper in this District as the Defendant is organized under the laws of Massachusetts.

## Factual Allegations

5.      In late March or early April 1995, Laura Lampas (hereinafter "Ms. Lampas"), on information and belief a representative of Defendant, showed Mr. Urbano Unit 8 at 8 Flume Road in Gloucester, Massachusetts (hereinafter "the apartment"). The showing took place in the late afternoon.

6.      Mr. Urbano agreed to rent the apartment and took occupancy on April 3, 2005. The parties did not sign a written lease, but agents of Defendant informed Mr. Urbano that they would do so at a later date. To date, a written lease has not been executed.

7.      Upon occupying the apartment, Mr. Urbano paid Defendant $675 in rent for April 2005 and an additional $675 to serve as either a security deposit or last month's rent.

8.      When Mr. Urbano assumed occupancy in April 2005, the apartment had numerous defects. Among other things, there was no running water in the kitchen, no working telephone line, the heating system was defective, and the front door of the apartment building did not lock.

9.      Defendant remedied the lack of running water after Mr. Urbano complained. However, despite numerous requests by Mr. Urbano, the Defendant failed to remedy the other defects. Finally, Mr. Urbano reported the violations to the Gloucester Health Department in early July 2005.

10.     Ms. Lampas failed to notify Mr. Urbano of a number of number of conditions that may have affected Mr. Urbano's decision to assume occupancy of the apartment. These conditions were not readily apparent when Mr. Urbano viewed the apartment. The apartment is adjacent to a day care center, where ten to 15 children make significant noise during the day.

The tenant in the unit above Mr. Urbano has a dog, which is left alone in the apartment for much of the day. The dog barks and runs around throughout the day.

11.     As Mr. Urbano frequently works from home, he is often in his apartment during the day. Accordingly, the noise impairs his ability to perform his work.

12.     Mr. Urbano has paid the heat and electric bills while residing in the apartment. The parties did not execute an agreement assigning responsibility for paying the utility bills.

13.     Upon information and belief, 8 Flume Road, Gloucester, Massachusetts was built in 1970.

14.     Defendant never provided Mr. Urbano with written notification that, because of the building's age, it was possible that the apartment contained lead paint.

15.     Defendant never provided Mr. Urbano with a copy of the Commonwealth's standard notification brochure.

16.     Defendant never provided Mr. Urbano with a copy of the most recent lead paint inspection report, letter of interim control, letter of compliance, or abatement plan applicable to the apartment and to the common areas or exterior surfaces of the residential premises.

17.     Defendant never asked Mr. Urbano to sign a certification that he had received any materials from Defendant alerting him to the possible presence of lead paint and the risks of lead exposure.

18.     Mr. Urbano began withholding rent in July 2005 because of Defendant's failure to cure the apartment's defects.

19.     In early July 2005, Mr. Urbano contacted the Gloucester Health Department regarding the defects in the apartment.

20.     Soon after Mr. Urbano contacted the Gloucester Health Department, Defendant sought to evict Mr. Urbano by commencing a summary process action in Northeast Housing Court.  That action was dismissed because Defendant failed to provide Mr. Urbano with proper notice to quit.

21.     Defendant thereafter commenced a second eviction proceeding on July 27, 2005, when it served Mr. Urbano with notice to quit for nonpayment of rent.  That action was stayed pending the resolution of the instant case.

## Count I

### (Violation of 42 U.S.C. § 4852d)

22.     Mr. Urbano repeats and realleges the allegations set forth in paragraphs 1-21 of the complaint as if fully set forth herein.

23.     Defendant failed to provide Mr. Urbano with a lead hazard information pamphlet and Lead Warning Statement prior to leasing the apartment, as required by 42 U.S.C. § 4852d.

24.     Defendant's actions have damaged Mr. Urbano.

## Count II

### (Violation of M.G.L. c. 111, § 197A)

25.     Mr. Urbano repeats and realleges the allegations set forth in paragraphs 1-24 of his complaint as if fully set forth herein.

26.     Defendant failed to provide Mr. Urbano with (a) the Commonwealth's standard notification brochure notifying tenants of the hazards of lead; (b) a copy of the most recent lead paint inspection report, letter of interim control, letter of compliance, or abatement plan applicable to the apartment and to the common areas or exterior surfaces of the residential premises; (c) two copies of a statement certifying that Mr. Urbano received the above materials.

27.     Defendant's failure to provide Mr. Urbano with such materials was a violation of M.G.L. c. 111, § 197A(d)(2).

28.     Defendant's actions damaged Mr. Urbano.

## Count III

### (Violation of M.G.L. c. 93A)

29.     Mr. Urbano repeats and realleges the allegations set forth in paragraphs 1-28 of his complaint as if fully set forth herein.

30.     Defendant's actions as set in Count II above were a violation of the Massachusetts Lead Paint Notification Statute, M.G.L. c. 111, § 197A(d)(2).

31.     Defendant is a Massachusetts corporation, in the business of leasing property. Thus, Defendant is engaged in trade or commerce.

32.     Defendant's actions as set forth above took place primarily within the Commonwealth of Massachusetts.

33.     Defendant's actions as set forth above were willful and knowing.

34.     Pursuant to M.G.L. c. 111, § 197A, a violation to the Massachusetts Lead Paint Notification Statute by a person engaged in trade or commerce constitutes an unfair and deceptive act or practice.

35.     Mr. Urbano has suffered damages as a result of Defendant's violation of c. 93A.

## Count IV

### (Breach of Implied Warranty of Habitability)

36.     Mr. Urbano repeats and realleges the allegations set forth in paragraphs 1-35 of his complaint as if fully set forth herein.

37.     The conditions of the apartment as set forth above violated provisions of the State Sanitary Code.

38.     In failing to repair the defects and maintain the premises in a livable condition, the Defendant breached the implied warranty of habitability.

39.     Mr. Urbano was damaged by the Defendant's breach of the implied warranty of habitability.

### Count V

### (Breach of the Covenant of Quiet Enjoyment)

40.     Mr. Urbano repeats and realleges the allegations set forth in paragraphs 1-39 of his complaint as if fully set forth herein.

41.     When Defendant leased the premises to Mr. Urbano, its representative failed to notify Mr. Urbano of a day care center located adjacent to Mr. Urbano's apartment.

42.     The noise from the day care center interfered with Mr. Urbano's ability to work from home and disrupted his enjoyment of his apartment.

43.     In failing to alert Mr. Urbano to the presence of the day care center, Defendant impaired the character and value of the premises.

44.     Defendant's conduct, as set forth above, breached the covenant of quiet enjoyment.

45.     Mr. Urbano was damaged by Defendant's breach of the covenant of quiet enjoyment.

### Count VI

### (Retaliatory Eviction)

46.     Mr. Urbano repeats and realleges the allegations set forth in paragraphs 1-45 of his complaint as if fully set forth herein.

47.     Mr. Urbano filed his initial complaint against Defendant on June 27, 2005. Shortly after that, he contacted the Gloucester Health Department to report health code violations in the apartment.

48.     After the filing of Mr. Urbano's initial complaint and his report to the Gloucester Health Department, Defendant filed a summary process action with the Northeast Housing Court; that action was dismissed.  On July 27, 2005, Defendant again attempted to evict Mr. Urbano.

49.     At the time of the summary process actions, Mr. Urbano had withheld his July 2005 rent because of the condition of the apartment.

50.     Defendant's attempt to evict Mr. Urbano less than a month after he filed his initial complaint and contacted the Gloucester Health Department amounted to a retaliatory eviction in violation of M.G.L. c. 186, § 18.

51.     Mr. Urbano was damaged by Defendant's attempted retaliatory eviction.

WHEREFORE, Urbano respectfully requests that the Court:

A.     Award to Mr. Urbano his damages sustained as a result of Defendant's wrongful conduct, such damages to be trebled pursuant to 42 U.S.C. § 4852d(b)(3) and Chapter 93A, § 9 of the Massachusetts General Laws; and

B.     Award to Mr. Urbano his damages sustained as a result of Defendant's attempted retaliatory eviction, such damages to be no less than one month's rent pursuant to Chapter 186, § 18 of the Massachusetts General Laws; and

C.     Award to Mr. Urbano the costs of this action and his reasonable attorney's fees pursuant to 42 U.S.C. § 4852d(b)(4), Chapter 93A, § 9 of the Massachusetts General Laws, and Chapter 186, §§ 14 and 18 of the Massachusetts General Laws; and

D.      Assess a fine of $1000 against Defendant pursuant to Chapter 111, § 197A(e) of

the Massachusetts General Laws; and

E.      Order such other and further relief as the Court may deem just and proper.

ROBERT F. URBANO,

By his attorney,

  /s/ Adam Weisberger         
Adam Weisberger (BBO # 646844)
FOLEY HOAG LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, MA 02210-2600
tel (617) 832-1000
fax (617) 832-7000
aweisberger@foleyhoag.com

Dated:  December 5, 2005